No. 29,258.

EARL WRIGHT, *Appellee,* v. THE PROVIDENCE WASHINGTON
INSURANCE COMPANY, *Appellant.*

(286 Pac. 237.)

Opinion filed April 5, 1930.

*H. O. Trinkle,* of Garden City, for the appellant.

*R. J. Shetlar,* of Johnson City, *C. E. Vance, C. R. Hope* and *A. M. Fleming,*
all of Garden City, for the appellee.

The opinion of the court was delivered by

HUTCHISON, J.:   The appeal in this case involves the validity of
an application for hail insurance in connection with preliminary in-
surance only, where the name of the owner was signed to the appli-
cation by the agent of the insurance company.   The trial court ren-

dered judgment for the owner on the preliminary insurance clause contained in the application, and from such judgment the insurance company appeals.

The owner of one-fourth interest in 120 acres of growing wheat in Stanton county resided in Newton, Kan., and wrote his attorney, R. J. Shetlar, of Johnson City, requesting him to take out $600, or $5 per acre, of hail insurance for him on his wheat. This he undertook to accomplish by asking J. B. Cockrum, agent for the insurance company, to write up the same, giving him the name and address of the owner and the description of the land on which the wheat was growing, and guaranteed the payment of the premium to the satisfaction of the agent.

Findings 7, 8 and 9 of the trial court give the special provisions for preliminary insurance as contained in the application and show how the application was signed, and are as follows:

"7. Upon this conversation the application for hail insurance was written up and signed, at 4:30 p. m., June 25, 1928, 'Earl Wright, by J. B. Cockrum, applicant,' and also signed by J. B. Cockrum as agent for the company. Mr. Shetlar did not sign the application for his principal, Earl Wright, but did, by his transactions with Cockrum, authorize Cockrum, as a subagent for Wright, to sign the same.

"8. The application signed was on the printed form furnished by the defendant company to its agent, and contained the following provision: 'I, Earl Wright, of (post office) Newton, state of Kansas, hereby make application to the Providence Washington Insurance Company, of Providence, R. I., for insurance upon growing crops hereafter more specifically described, against loss or damage by hail only, to the amount of $600 beginning twenty-four hours from the hour and date of the actual signing of this application by me and the agent of this company, unless otherwise herein provided.' There were no other provisions altering this clause contained in the application.

"9. The application further provided: 'It being understood and agreed that this insurance takes effect from the time provided herein for the commencement thereof, in accordance with the conditions hereof, and is held binding as a special agreement until twenty-four hours after the receipt of this application by this company at its policy-writing office, during which time this company will either complete the contract by the issuance of a policy or reject the same by telegram or registered mail to the address given above, and all liability hereunder will immediately terminate when such rejection reaches the post office or the telegraph office at the above address.' "

The findings further show that the application and premium reached Topeka, the policy-writing office of the company, at 8 a. m., June 29, and it and others from the same county were that day rejected by the company because of severe hail losses in that locality, such rejection being sent by unregistered mail to the agent at

Johnson City, which information was received by the agent on June 30, after the complete destruction of the wheat by hail at 9 p. m., on the 29th.

The failure of the owner or anyone in his behalf except the agent of the company to sign the application is discussed by the appellant under two headings: First, the name of appellee was not signed with any authority; second, the failure of the appellee to actually sign was not waived by appellant.

Under the first heading appellant insists that there was no evidence to support that part of finding No. 7 which states that the owner through his representative Shetlar authorized Cockrum as subagent for the owner to sign the application. Mr. Shetlar's evidence on this subject was as follows:

"I received a letter that requested me to secure the insurance for him (Mr. Wright): I went down to the bank and told Mr. Cockrum what I wanted, and told him where Mr. Wright lived, and gave him the description of the land and told him that Mr. Wright would want to give a note and we would have to send that note to him to be signed, and that I would guarantee the return of the note properly signed."

The following was the evidence of Mr. Cockrum on this subject:

"Q. Now, on or about the 25th day of June, 1928, did you receive a request to write, or apply for hail insurance on the wheat belonging to Mr. Wright, being a one-fourth interest in the wheat growing on the northwest one-fourth of section 13, township 30, range 41, in Stanton county? A. Yes, sir.

"Q. From whom did you receive that request? A. R. J. Shetlar.

"Q. Did Mr. Shetlar at that time make arrangements with you about the payment of the premium? A. He did.

"Q. Did you, pursuant to that request, make out an application for insurance? A. I did.

"Q. You signed this, both on behalf of Mr. Wright and as agent for the company, did you? A. I did."

This testimony shows that Mr. Wright, the owner, requested Mr. Shetlar to procure hail insurance for him on his wheat. He communicated this request with the necessary detailed information to Mr. Cockrum, the agent of the company, and thus turned the matter over to him to carry out Mr. Wright's request, making provision for the signing of the premium note. Mr. Cockrum says he received the request "to write or apply for hail insurance" for Mr. Wright and pursuant to that request, through Mr. Shetlar, he made out the application and signed it on behalf of Mr. Wright. This appears even stronger than an implied request and authorization. It very

closely approaches an express request. In this connection it is proper to observe that the matters of discretion and judgment on the part of the owner had all been exercised when he determined to insure for a definite amount and directed Mr. Shetlar to procure the insurance for him. Besides, the very fact of delegating authority to Shetlar to carry out his plans necessarily implied the right to request others to put such plan into operation, even to the extent of employing a subagent.

"Express authority to appoint subagents is not always necessary, as such authority is usually to be implied when the agency obviously and from its very nature is such as to make the employment of subagents necessary and proper. In such cases the employment of subagents is presumed to have been contemplated when the power was given, and the agent has implied authority to appoint such subagents within the limits of the necessities of the case." (2 C. J. 688.)

"Where an agent is employed to do acts which do not call for the exercise of judgment or discretion, or where he has exercised his discretion and determined upon the propriety of an act, he may delegate to a subagent the execution of merely mechanical, clerical, or ministerial acts involving no judgment or discretion; and the acts of such a subagent, to whom such power and authority have been delegated by the agent, are regarded as the acts of the agent himself, and are therefore as such binding on the principal." (2 C. J. 689.)

Our attention is called by appellant to the well-recognized principle stated in 21 R. C. L. 860, that—

"It is a general rule that, in all cases of delegated authority, where personal trust or confidence is reposed in the agent, and especially where the exercise and application of the power is made subject to his judgment or discretion, the authority is purely personal, and cannot be delegated to another, unless there is a special power of substitution, either express or necessarily implied."

As we have heretofore observed, the matter of judgment and discretion was exercised by the owner before he wrote to his attorney, and it is well understood in Kansas that all insurance companies authorized to transact such business in this state are required to charge the same rate and they are all under the supervision of the commissioner of insurance, and while there may be preferences of some above others in the minds of some, even that feature was waived by the owner when he made no such intimation with his request. Neither is there apparent in this request of the owner to his attorney any element of personal trust or confidence as is definitely mentioned in the authority cited.

Appellant urges the significance of the following clause in the

application, "beginning twenty-four hours from the hour and date of the actual signing of this application by me and the agent of this company," as indicating that the application must be actually signed by the owner himself. It can hardly be contended that no such application can be effectually signed except by the party himself, which might exclude partnerships, corporations and many others, but the apparent emphasis conveyed by the use of the word "actually" is with reference to the time or date the application is actually signed, instead of being actually signed "by me and the agent of the company."

Under this heading appellant urges there was no ratification by the owner or his representative before the loss, and the findings of fact do not specify the exact day or hour when Shetlar sent the note for the owner's signature, and we shall therefore pass that matter and consider the second ground urged by appellant that the actual signing of the application was not waived by the appellant. 1 Cooley on Insurance (2d ed., p. 566) is cited as to the rule for waiving the signing by the applicant where such is shown to be the custom and usage of the company, but without any such allegations or proof in this case the rule could not apply. We accept this as good logic, but it does not seem to cover the whole territory of waiver by the appellant. It does as far as a general custom of the company is concerned. Here we have a form of application which provides for preliminary insurance, which automatically becomes a temporary insurance policy twenty-four hours after it is signed. The company itself prepared the application in this form and sent it to its local agent, who, by his own signature on behalf of the company, can approve it and make it an effective temporary insurance policy. · The local agent to whom the company sent this form, and not the company, is the one who does the waiving of any specific details or requirements when he approves the application and sets it in motion as the instrument itself provides. Aside from the language of the application the signature of the applicant is not always necessary. (32 C. J. 1104.) The application is an offer and its acceptance makes a contract. (32 C. J. 1105.)

Objection is made to the dual capacity in which the local agent acted in signing the name of the applicant as well as that of the insurance company to the application. The rule against such is applicable where the transaction involves the exercise of discretion

and where the interests of the parties are conflicting (2 C. J. 712), but it is said in the same connection that—

"The above general rule does not apply where the interests of the two principals are not conflicting, and loyalty by the agent to one of them is not a breach of his duty to the other." (2 C. J. 713.)

It was held in *Wilson v. Insurance Co.*, 90 Kan. 355, 133 Pac. 715, and *Bank v. Insurance Co.*, 91 Kan. 18, 137 Pac. 78, that in the absence of fraud or some special personal or conflicting interest the general rule against dual agency did not apply to insurance agents. (See, also, 49 L. R. A., n. s., 972.)

We conclude that there was sufficient evidence to support the finding of the trial court that the agent of the company was authorized to sign the name of the owner to the application for insurance, and that upon the approval of the application by the agent of the company the provisions therein contained became operative and binding on the defendant company as to preliminary insurance.

The judgment is affirmed.